[Cite as *State v. Deems*, 2016-Ohio-5608.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| BENJAMIN M. DEEMS | : | Case No. 15CA101 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from Court of Common Pleas, Case No. 2015CR0191


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     August 22, 2016


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

DANIEL M. ROGERS                  JEFFREY P. ULRICH
38 South Park Street                  P.O. Box 1977
Mansfield, OH 44902                 Westerville, OH 43086

*Farmer, P.J.*

{¶1}    On February 26, 2015, the Richland County Grand Jury indicted appellant, Benjamin Deems, on four counts of endangering children in violation of R.C. 2919.22(A), (B)(1), and (E)(2)(c) and (d), and three counts of felonious assault in violation of R.C. 2903.11(A)(1).  Said charges arose from incidents involving appellant and his infant son, B.D., born December 16, 2014.  The infant suffered permanent brain damage and nineteen rib fractures.  Mother of the infant is Amanda Isaac.

{¶2}    Prior to trial, one of the endangering children counts and one of the felonious assault counts were dismissed.  A jury trial commenced on the remaining counts on October 26, 2015.  The jury found appellant guilty on all counts.  By judgment entry filed November 2, 2015, the trial court merged some of the counts and sentenced appellant to an aggregate term of nineteen years in prison.

{¶3}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶4}    "THE CONVICTIONS OF CHILD ENDANGERING AND FELONIOUS ASSAULT AGAINST DEFENDANT ARE NOT SUSTAINED BY THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶5}    Appellant claims his convictions for child endangering and felonious assault were against the sufficiency and manifest weight of the evidence as there was no evidence to establish when the injuries were inflicted on B.D. and who inflicted the

injuries, and no evidence was presented to establish that he knew or should have known that B.D. was in need of medical attention.  We disagree.

{¶6}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶7}   We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts."  *State v. Fairbanks,* 32 Ohio St.2d 34 (1972), paragraph five of the syllabus.  "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence."  *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44.  It is to be given the same weight and deference as direct evidence. *Jenks, supra.*

{¶8}  Appellant does not contest the fact that B.D.'s severe and/or permanent injuries (permanent brain damage and nineteen rib fractures) were the result of the infant being violently shaken and significant pressure being applied to his rib cage. Appellant's Brief at 10.  However, he argues there were no witnesses to the infliction of the injuries, someone else could have caused the injuries e.g., Amanda Isaac, the infant's mother, and no evidence was presented to establish that he knew or should have known that B.D. was in need of medical attention.  Appellant also argues despite the various negative factors reflecting on his parenting skills, none of them provided an "actual nexus between the injuries sustained by B.D. and the actual causation of those injuries."  Appellant's Reply Brief at 1.

{¶9}  Appellant was convicted on three counts of endangering children in violation of R.C. 2919.22(A), (B)(1), and (E)(2)(c) and (d) which state:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.***

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child.

(E)(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree;

(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree.

{¶10} Appellant was also convicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1) which states: "No person shall knowingly do either of the following: [c]ause serious physical harm to another or to another's unborn."

{¶11} Based upon the charges, the state was required to prove that appellant recklessly abused B.D. on at least two occasions and the infant suffered serious physical harm as a result of the abuse, and appellant recklessly created a substantial risk to B.D.'s health and caused him serious physical harm by violating a duty of care to B.D. There is no dispute that the infant suffered two separate injuries: permanent brain damage and nineteen rib fractures.

{¶12} Steven Gregory Escue, M.D., the emergency room physician who examined B.D. on February 13, 2015, testified the infant presented as nonresponsive, his eyes were deviated to the left, and his stomach was "very distended, very firm, very swollen." T. at 223; State's Exhibits 4 and 5. X-rays showed the infant had multiple rib

fractures on both sides of his chest, and they were in "multiple different ages and stages of healing." T. at 231, 238, 240; State's Exhibit 7. Therefore, there were at least two separate trauma incidents. T. at 232, 240. Dr. Escue opined on a child it would take "a lot of force to break a rib" because an infant's ribs are more flexible. T. at 233-234.

{¶13} Richard Daryl Steiner, D.O., Medical Director of the Care Center at Akron Children's Hospital, testified the infant suffered a head injury, a neck injury, multiple rib fractures, and an abdominal injury "which was a tearing of one of the major lymphatic ducts inside the abdomen that caused fluid to collect inside his belly." T. at 391. The traumatic brain injury resulted from a nonimpact trauma to the head, and the nineteen rib injuries were inflicted as opposed to accidental. T. at 381, 387, 389, 394; State's Exhibit 13. The traumatic brain injury and the neck injury were caused by the head being "whiplashed back and forth" and "whiplash shaking." T. at 389, 392. The rib injuries were to the back, sides, and front of the rib cage. T. at 393. Some of the rib fractures had healed or were in the process of healing, indicating they "occurred at a time about two to three weeks" prior to hospitalization. T. at 393. Dr. Steiner opined B.D. "suffered multiple episodes of physical abuse over the course of the previous two to three weeks." T. at 400.

{¶14} The challenge to the jury verdict rests solely on whether it was proven, either by direct or circumstantial evidence, that appellant caused the two traumatic injuries to the infant and created a substantial risk to the infant's health by violating a duty of care.

{¶15} Appellant told police officers he was B.D.'s primary caregiver. T. at 303, 332. During his testimony and to the police officers, appellant related three incidents to

justify the infant's injuries. In the first incident, the infant slipped out of appellant's hands while being dressed and hit the hardwood floor. T. at 302, 446-447. In the second incident, when the infant was about one month old, he rolled off the couch onto the floor. T. at 302, 305, 464. The third incident right before the hospitalization on February 13, 2015, occurred when the infant started to throw up after feeding, began choking, and "really wasn't breathing." T. at 295, 435, 456. Appellant started "patting both sides of his back and front," "hitting him pretty hard," trying to get B.D. to breathe. T. at 295-296, 435, 438, 441, 468-469. After the infant started breathing, "like a gasp," appellant called the infant's mother at work. T. at 439-440. Appellant picked up mother and drove the infant to the hospital instead of calling 911 because "I just figured that I can get him there faster." T. at 442.

{¶16} Appellant's explanations of the earlier falls and him hitting the infant during the choking incident, as well as the infant's birth and family medical history, were rejected by the medical experts as the cause(s) of the injuries suffered by B.D. T. at 233, 236, 373, 387-389, 395-399. Both Dr. Escue and Charles Shaw, M.D., the infant's pediatrician, testified infants roll over "around four months." T. at 233, 365.

{¶17} Dr. Shaw testified B.D. was a healthy newborn from his birth on December 16, 2014, to his four day check-up on December 20, 2014, to his follow-up check-up on December 31, 2014. T. at 352, 356-357. The first report of any problems was a telephone call to Dr. Shaw's office on January 27, 2015, to report swollen testicles. T. at 359. Another telephone call on February 5, 2015, was to report constipation. T. at 360. Appellant testified the infant had a swollen belly starting around February 9, 2015, and "[i]t gradually got big." T. at 436-437. Although a regularly scheduled appointment

with Dr. Shaw was set for February 10, 2015, the appointment was rescheduled because appellant was running late. T. at 362, 437. On February 13, 2015, the infant's mother called Dr. Shaw's office to report the vomiting and choking incident and was directed to go to the emergency room. T. at 364. Other than the listed dates, no other telephone calls were made to Dr. Shaw's office. *Id.* Appellant stated he called Dr. Shaw's office to report the infant's enlarged belly on February 9, 2015 and/or after. T. at 304, 437, 465. Dr. Shaw stated a telephone call was not received and an enlarged belly was never reported. T. at 360-361.

{¶18} Appellant testified the infant cried and fussed all the time and he admitted it frustrated him, and although the infant's mother was alone with B.D., he "didn't believe it was her." T. at 446, 462-463.

{¶19} The jury was faced with determining whose explanation for the injuries was more credible, the medical experts' or appellant's version. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶20} Upon review, we find there was substantial credible evidence to support the jury's verdict, and find no manifest miscarriage of justice.

{¶21} The sole assignment of error is denied.

{¶22} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, P.J.

Hoffman, J. and

Wise, J. concur.

SGF/sg 811